**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CONNOR SPORT COURT INTERNATIONAL, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>XENU ORGANIZATION LLC d/b/a BUILD MY COURTS, a Texas Limited Liability Company, and JOHN DOES 1–10,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-03277<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT WITH JURY DEMAND**

Plaintiff Connor Sport Court International, LLC ("CSCI"), by and through its counsel, hereby files this Complaint with Jury Demand against Defendant XENU ORGANIZATION LLC d/b/a Build My Courts ("Build My Courts") and John Does 1–10 (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. CSCI brings this action under the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.*

**PARTIES**

2. Plaintiff Connor Sport Court International, LLC ("CSCI") is a Delaware limited liability company with its principal place of business at 5445 W. Harold Gatty Drive, Salt Lake City, Utah 84116. CSCI has contracted independent distributors, dealers, and installers to sell its products and services nationally across the United States, including within this judicial district.

3. Upon information and belief, Defendant XENU ORGANIZATION LLC d/b/a Build My Courts ("Build My Courts") is a Texas limited liability company with its principal place of business at 5900 Balcones Drive, Suite 100, Austin, Texas 78731. Defendant operates under the assumed name "Build My Courts."

4. Defendants John Does 1–10 are individuals and/or entities whose identities are presently unknown but who, upon information and belief, direct, control, or otherwise participate in the operation of Build My Courts, including the infringing use of CSCI's trademarks. CSCI will amend this Complaint to allege their identities when they become known.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1114, 1121, and 1125, because this action arises under the Lanham Act.

6. This Court has personal jurisdiction over Defendant Build My Courts because Defendant's principal place of business is located in Austin, Texas, and Defendant offers its products and services throughout Texas.

7. This Court has personal jurisdiction over Defendants Does 1–10 because, upon information and belief, they direct or participate in the infringing acts that target Texas and cause injury to CSCI in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Build My Courts resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is proper in the Austin Division because Build My Courts maintains its principal place of business in Travis County, Texas, which lies within the Austin Division. *See* 28 U.S.C. § 124(d)(1).

## GENERAL ALLEGATIONS

### CSCI'S TRADEMARKS

9. Since at least as early as 1974, CSCI (and/or its predecessors-in-interest) has used the mark SPORT COURT in connection with the sale of athletic flooring, athletic accessories, and distribution, dealership, installation, and maintenance services for those products.

10. CSCI is the standout leader within the athletic flooring industry and supplies SPORT COURT branded products to such notable organizations as the National Collegiate Athletic Association (the "NCAA") and USA Volleyball.

11. For over 50 years, CSCI (and/or its predecessors-in-interest) has marketed and distributed its goods and services nationally, including in the State of Texas, under the mark SPORT COURT, acquiring substantial federal and common law trademark rights as well as goodwill in the mark SPORT COURT (hereinafter, the "SPORT COURT Mark").

12. CSCI's federal trademark rights include ownership of United States Trademark Registration No. 1,100,976 ("the '976 Registration") for the mark SPORT COURT registered for use in connection with "recreational patio installation services." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit A is a copy of the '976 Registration certificate and a printout of its current status on the Trademark Status & Document Retrieval system of the United States Patent and Trademark Office ("TSDR").

13. CSCI is also the owner of United States Trademark Registration No. 1,155,586 ("the '586 Registration") for the mark SPORT COURT registered for use in connection with "sports equipment-namely, backboards, nets and ball rebounders." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit B is a copy of the '586 Registration certificate and a printout of its current status on TSDR.

14. CSCI is also the owner of United States Trademark Registration No. 1,727,818 (“the ’818 Registration”) for the mark SPORT COURT registered for use in connection with “recreational and athletic play surfaces and related equipment for said surfaces; namely, nets, basketball backboards and lighting fixtures sold as a unit.” This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit C is a copy of the ’818 Registration certificate and a printout of its current status on TSDR.

15. CSCI is also the owner of United States Trademark Registration No. 2,479,328 (“the ’328 Registration”) for the mark SPORT COURT registered for use in connection with “plastic interlocking floor tiles.” This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit D is a copy of the ’328 Registration certificate and a printout of its current status on TSDR.

16. As a result of CSCI’s long and extensive use of the SPORT COURT Mark, it has become well known as an indicator of high-quality athletic flooring and related services.

17. The SPORT COURT Mark has acquired significant goodwill and is an asset of enormous value.

18. Through CSCI’s promotion and advertising under the SPORT COURT Mark, the public has come to recognize the SPORT COURT Mark as originating from CSCI.

19. The SPORT COURT Mark is distinctive when used in connection with CSCI’s goods and services.

## DEFENDANTS’ MISCONDUCT

20. Defendants are in the business of installing, resurfacing, and maintaining indoor and outdoor athletic surfaces for residential and commercial spaces, and as a result, Defendants directly compete with CSCI in the athletic flooring industry.

21. Defendants improperly use the SPORT COURT Mark in their marketing and advertising materials and on their website www.buildmycourts.com ("Website"), as well as on Defendants' Facebook page. Attached as Exhibit E is a non-exhaustive compilation of screenshots showing Defendants' unauthorized use of the SPORT COURT Mark, including visible text on the Website, and visible text on Defendants' Facebook and Instagram pages.

22. On their primary Facebook page, Defendants prominently hold themselves out as "Texas' Premier Sport Court Builders" as shown below:




23. Defendants are not authorized by CSCI to use the SPORT COURT Mark in connection with Defendants' goods and services.

24. Defendants are offering goods and services highly similar to the types of goods and services offered by CSCI while using a trademark that is identical to or substantially indistinguishable from the SPORT COURT Mark owned by and federally registered to CSCI.

25. Defendants' actions are likely to cause confusion, to cause mistake, or to deceive consumers as to the source of its goods and services and cause a false association between CSCI and Defendants.

26. Upon information and belief, Defendants use the SPORT COURT Mark with the intent to influence the results of Internet search engine queries for "SPORT COURT."

27. On or about March 31, 2025, CSCI sent Defendants a cease-and-desist letter, requesting that Defendants cease any further use of the SPORT COURT Mark, as well as any other substantially similar marks on the Website. A copy of the letter is attached as Exhibit F. CSCI requested written compliance by April 14, 2025. No response was received, and no changes were made to the Website.

28. On or about June 11, 2025, counsel for CSCI sent Defendants a second cease-and-desist letter demanding that Defendants cease use of the SPORT COURT Mark by June 25, 2025. A copy of this letter is attached as Exhibit G. Later that same day, Defendants responded by email asserting that CSCI's trademark rights extended only to "plastic interlocking floor tiles" and that Build My Courts was not engaged in that business. On June 24, 2025, counsel for CSCI replied, explaining that CSCI's SPORT COURT trademarks also cover "Recreational and athletic play surfaces," which Defendants advertise and sell, and again demanded removal of the infringing marks. That same day, Defendants responded with a one-word email: "No." A copy of this correspondence is attached as Exhibit H.

29. Defendants, therefore, have actual notice that CSCI owns federal trademark registrations for the SPORT COURT Mark and owns common law rights in the SPORT COURT Mark.

30. Defendants' actions are likely to cause confusion, to cause mistake, or to deceive consumers as to the source of its goods and services and cause a false association between CSCI and Defendants.

31. Upon information and belief, Defendants' actions constitute a knowing and willful false designation of origin of Defendants' goods and services.

32. Upon information and belief, Defendants' actions have resulted in, and will continue to result in, substantial, imminent, and irreparable harm and injury to CSCI and consumers. Additionally, the harm to CSCI from Defendants' actions is not fully compensable by money damages. CSCI has suffered and continues to suffer irreparable harm that has no adequate remedy at law and that will continue unless the infringement committed by Defendants is permanently enjoined.

## FIRST CAUSE OF ACTION

### INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS - 15 U.S.C. § 1114

33. CSCI realleges and incorporates by reference all of the foregoing paragraphs.

34. CSCI owns the '976 Registration, '586 Registration, '818 Registration, and '328 Registration, all of which are valid United States trademark registrations for the SPORT COURT Mark, and holds the exclusive rights to market and sell its products and services bearing the SPORT COURT Mark.

35. Defendants use the SPORT COURT Mark in their marketing and advertising materials, on the Website, and on Defendants' Facebook and Instagram pages, including in the visible text.

36. Defendants are not authorized by CSCI to use the SPORT COURT Mark in connection with Defendants' goods and services.

37. Defendants' actions are likely to cause confusion, to cause mistake, or to deceive consumers and are trademark infringement pursuant to 15 U.S.C. § 1114.

38. Upon information and belief, Defendants' actions were and are deliberate, willful, fraudulent, and constitute a knowing infringement of the SPORT COURT Mark.

39. Defendants' infringement of the SPORT COURT Mark has caused and will continue to cause damage and irreparable injury to the value and goodwill of the SPORT COURT Mark, as well as damage and cause irreparable injury to CSCI's goodwill, business, and reputation.

40. Upon information and belief, CSCI is being irreparably damaged by Defendants' willful, unauthorized use of the SPORT COURT Mark in the manner set forth above and will continue to be damaged unless Defendants are enjoined from using CSCI's SPORT COURT Mark or any colorable imitation thereof.

41. CSCI is entitled to injunctive relief under 15 U.S.C. § 1116(a) as there is no adequate remedy at law to fully redress Defendants' illegal conduct.

42. In addition to injunctive relief, CSCI is entitled to all actual damages and lost profits that it has sustained in the amount to be determined at trial, including but not limited to three times Defendants' profits and gains as a result of its unfair competition described above, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION - 15 U.S.C. § 1125(a)(1)(A)

43. CSCI realleges and incorporates by reference all of the foregoing paragraphs.

44. CSCI owns the '976 Registration, '586 Registration, '818 Registration, and '328 Registration, all of which are valid United States trademark registrations for the SPORT COURT

Mark, and holds the exclusive rights to market and sell its products and services bearing the SPORT COURT Mark.

45. The SPORT COURT Mark has achieved secondary meaning, associating it in the minds of the purchasing public with CSCI and its services.

46. Defendants use the SPORT COURT Mark in their marketing and advertising materials, on the Website, and on Defendants' Facebook and Instagram pages, including in the visible text.

47. Defendants are not authorized by CSCI to use the SPORT COURT Mark in connection with Defendants' goods and services.

48. Defendants' conduct as alleged herein, including their use of the SPORT COURT Mark, constitutes a false designation of origin, sponsorship, affiliation, and/or association of CSCI or the SPORT COURT Mark with Defendants and Defendants' products and services.

49. Defendants' conduct as alleged herein is willful and is intended to and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with CSCI, or as to the origin, sponsorship or approval of Defendants' goods, services, or commercial activities by CSCI.

50. Defendants' conduct constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

51. Upon information and belief, CSCI is being irreparably damaged by Defendants' unfair competition in the manner set forth above and will continue to be damaged unless Defendants are enjoined from using CSCI's SPORT COURT Mark or any colorable imitation thereof.

52. CSCI is entitled to injunctive relief under 15 U.S.C. § 1116(a) as there is no adequate remedy at law to fully redress Defendants' illegal conduct.

53. In addition to injunctive relief, CSCI is entitled to all actual damages and lost profits that it has sustained in the amount to be determined at trial, including but not limited to three times Defendants' profits and gains as a result of its unfair competition described above, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment in favor of CSCI as follows:

A. That the Court enter judgment that Defendants' use of the SPORT COURT Mark is likely to cause confusion resulting in trademark infringement in violation of 15 U.S.C. § 1114 and § 1125(a)(1)(A);

B. That the Court enter judgment that Defendants' actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A);

C. That the Court preliminarily and permanently enjoin Defendants from using the terms "sportscourt," "multi-sport court," "multi-sports court," "sport court," "sports court," "sport courts," "sportcourts," or any term that infringes the SPORT COURT Mark, or unfairly competes with CSCI;

D. That the Court order Defendants to remove all infringing uses of the SPORT COURT Mark from the Website, Defendants' Facebook and Instagram pages, Defendants' social media accounts, related advertising, source code, sponsored search results, and other online content;

E. That the Court order such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that the products and services sold and promoted by Defendants are authorized by CSCI or related in any way to CSCI's services;

F. That the Court enter judgment ordering Defendants to provide CSCI with a full and complete accounting of all products sold and profits gained in connection with their infringing activities;

G. That the Court enter judgment that CSCI recover from Defendants damages in an amount to be proven at trial, including general, special, actual, and statutory damages. Pursuant to 15 U.S.C. § 1117, the amounts should include CSCI's damages and Defendants' profits, if any, trebled pursuant to 15 U.S.C. § 1117(b), or alternatively, enhanced statutory damages pursuant to 15 U.S.C. § 1117(c), for Defendants' willful violations of the SPORT COURT Mark;

H. That the Court require Defendants to pay prejudgment and post-judgment interest until such awards are paid;

I. That the Court require Defendants to pay CSCI's costs and attorneys' fees incurred in this action; and

J. That the Court order such other and further relief for CSCI as shall seem just and proper to the Court.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, CSCI hereby demands a jury trial on all claims and issues so triable.

DATED this 24th day of November 2026.

Respectfully submitted,

**SPENCER FANE LLP**

/s/ Danielle Healey
Danielle Healey
Texas Bar No. 09239780
Email: dhealey@spencerfane.com
Brittainy A. Joyner
Texas Bar No. 24128188
Email: bjoyner@spencerfane.com
3040 Post Oak Boulevard, Suite 1400
Houston, Texas 77056
Telephone: (713) 212-2708
Facsimile: (713) 963-0859

**THORPE NORTH & WESTERN, LLP**
Mark Bettilyon (*pro hac vice* admission pending)
Utah Bar No. 4798
Email: mark.bettilyon@tnw.com
Jed H. Hansen (*pro hac vice* admission pending)
Utah Bar No. 10679
Email: hansen@tnw.com
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 566-6633
Facsimile: (801) 566-0750

*Attorneys for Plaintiff,*
*Connor Sport Court International, LLC*